UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 25-cr-179 (JMB/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) GOVERNMENT'S MEMORANDUM ) IN SUPPORT OF MOTION FOR ) PRETRIAL DETENTION |
| CORY ALLEN McKAY, | ) |
| Defendant. | ) |

COMES NOW the United States of America, by and through its undersigned attorneys, Joseph H. Thompson, Acting United States Attorney for the District of Minnesota, and Thomas M. Hollenhorst, Assistant United States Attorney, and hereby moves this Honorable Court to order the pretrial detention of the defendant, Cory Allen McKay.

I.   Procedural History

On May 7, 2025, the defendant was charged in the Indictment with conspiracy to distribute 500 grams or more of methamphetamine (Count 1), and attempted possession with the intent to distribute 500 grams or more of methamphetamine (Count 2), both in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Doc. 1. The Indictment also lists the defendant's prior "serious violent felony" convictions for aggravated assault, domestic assault by strangulation, and third-degree assault resulting in substantial bodily harm. *Id.* With the filing of an information under 21 U.S.C. § 851, both counts will therefore carry a mandatory minimum sentence of 25 years in prison and a maximum sentence of life imprisonment. *See* 21 U.S.C. §§ 841(b)(1)(A) and 851.

## II.  Statement of Facts

The charges against the defendant stem from an investigation leading to the defendant's state arrest on June 12, 2024. On that date, investigators learned that FedEx employees based in Fargo had opened a suspicious package sent from California, which was addressed to the defendant at his apartment in Moorhead, Minnesota. Investigators seized the package and determined that it contained 4.446 kilograms (9.8 pounds) of high purity methamphetamine. Investigators contacted the defendant's apartment manager and learned that the defendant had just moved into the apartment and was its sole occupant. The manager suspected that the defendant was a drug dealer because of the "short-term" traffic at his former apartment. In fact, the apartment manager reported that the defendant had removed a window at his old apartment, which he used as a "drive-through" for his drug customers.

On June 12, 2024, investigators conducted a controlled delivery of the package after removing all but 127 grams of the methamphetamine from it. An investigator, posing as a FedEx delivery man, delivered the package directly to the defendant. Investigators then searched the apartment pursuant to a state search warrant. They found the unopened package in the defendant's bedroom which now had the words "Return to Sender" written on it after the defendant had likely seen law enforcement lurking about the premises. There were two other people at the apartment, at least one of whom appears to have been involved in the defendant's drug trafficking activities.

Investigators seized various cellphones as part of the investigation. Texts and other information found in these cellphones link the defendant and others to the package and to

other suspected drug traffickers in Minnesota, California, Chicago, and Mexico. The defendant was first charged in state court and was detained until his recent transfer to federal custody. His state charges have since been dismissed.

The defendant is no stranger to law enforcement and the courts. His past criminal record fills 10 pages of the bail report and reads like the index to the Minnesota Criminal Code. Over a span of 30 years, the defendant has garnered convictions for reckless endangerment, possession of a short-barrel shotgun, providing false information to law enforcement (seven times), possession of a controlled substance, third-degree drug offense, disorderly conduct (two times), driving under the influence (two times), possession of stolen property, ingesting a controlled substance, shoplifting (three times), theft (four times), involvement in a traffic accident resulting in injury or death, criminal vehicular homicide, aggravated assault, terrorizing, preventing an arrest, unlawful possession of marijuana, domestic assault by strangulation, a pharmacy offense, criminal trespass, third-degree assault resulting in substantial bodily harm, fifth-degree possession, and several vehicle related offenses. Doc. 4. By the government's count, the defendant has over 30 criminal convictions, at least a dozen of which were for felony offenses. Moreover, he has approximately 22 failures to appear, 10 probation violations, and four occasions of absconding from supervision. *Id.*

Several of the defendant's crimes involve extreme violence. For example, at the age of 16, the defendant placed a short-barreled shotgun under the chin of a victim and then discharged the weapon and said to others, "If I get arrested, I'm going to kill you." Doc. 4 at 2. Twenty-two years later, at the age of 38, the defendant was convicted for beating,

3

kicking, and strangling a woman who was eight months pregnant while her seven-month-old child was lying nearby. *Id.* at 6. A few years later, in 2020, the defendant was convicted of repeatedly striking his sister in the face. *Id.* at 8.

### III.  Argument

A.  Legal Framework

After the arrest of a person who is charged with a controlled substance offense that carries a maximum term of imprisonment of ten years or more, a judicial officer must conduct a detention hearing to determine whether any condition or combination of conditions of bond will reasonably assure the appearance of the person and the safety of any other person and the community. *See* 18 U.S.C. § 3142(f)(1)(C). The factors the judicial officer must consider are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

A rebuttable presumption of detention applies in this case. *See* 18 U.S.C. § 3142(e)(3)(A). "[A] defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.*

Pretrial detention may be ordered either upon (1) a showing by clear and convincing evidence that release will result in a danger to the community; or (2) a showing by a preponderance of the evidence that release will result in a serious risk of flight. *See Abad*, 350 F.3d at 797; *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

B.   <u>The Defendant Should Be Detained Pending Trial</u>

In this context, and after considering the factors outlined in § 3142(g) and the presumption of detention, the need for the defendant's detention is overwhelming. There are no conditions or combination of conditions of bond that would reasonably assure his appearance at future hearings or the safety of the community.

1. The Nature and Circumstance of the Offense

Congress has deemed the charges against the defendant so serious as to mandate a sentence of not less than 25 years in prison and a maximum sentence of life imprisonment upon conviction. *See* 21 U.S.C §§ 841(b)(1)(A) and 851. Further, in cases like this, the Sentencing Commission has specified a base offense level of 36. S*ee* USSG § 2D1.1(c)(2) (at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine). Because the defendant appears to have approximately 22 criminal history points, this places him in Criminal History Category VI, and would result in a Sentencing Guideline range of 324 to 405 months (27 to 34 years). *See* USSG Ch. 5, Pt. A (Sentencing Table).

2. The Weight of the Evidence

Although a defendant is afforded with the presumption of innocence during a detention hearing, *see* 18 U.S.C. § 3142(j), the evidence against the defendant is simply overwhelming. To state the obvious, he was caught red-handed with almost 10 pounds of methamphetamine. *See United States v. Bruno*, 89 F.Supp.3d 425, 431 (E.D.N.Y. 2015) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long . . . a defendant has stronger motives to flee.") (citation omitted).

3. The History and Characteristics of the Defendant

The information concerning the defendant's background is sketchy. What we do know about him comes from the bail report addendum. *See* Doc. 9. The defendant is 46 years old and was born in Devils Lake, North Dakota. *Id.* He has lived in Minnesota for the last 40 years. *Id.* He is single and has a 19-year-old daughter with whom "he has not

6

had much contact." *Id.* He reports that he has been unemployed since May 2023 and before that "worked at fast-food restaurants." *Id.* The defendant is apparently an insulin-dependent diabetic with high blood pressure. *Id.* He suffers from depression and anxiety and appears to have a serious substance abuse issue. *Id.* He has previously participated in five separate inpatient treatment programs, the most recent in 2023. *Id.*

Perhaps a more compelling history of the defendant's life is told by his criminal record. For over 30 years, beginning when the defendant was just 16 years old, the defendant has engaged in countless crimes, some minor, many serious. That the defendant seems incapable of conforming his conduct to acceptable standards is reflected by this criminal record and his myriad failures to appear and probation violations.

        4.    <u>The Nature and Seriousness of the Danger to any Person or the Community</u>

The defendant's misconduct demonstrates the serious danger he poses to other persons and the community if he is released. While criminal charges tend to curb a defendant's continued misconduct, there is no reason to believe that the defendant would not engage in other illegal activities if released on bond. Now, facing a sentence of at least 25 years in jail, there is no telling what the defendant's motivations might be if released on bond. One thing is certain, however – the defendant's release would put countless people at risk and provide the defendant with an excellent opportunity to abscond to avoid such a severe sentence.

### 5. The Defense Request for Placement in a Treatment Program

Despite the overwhelming evidence to support the defendant's pretrial detention, the defense will likely argue that the defendant's placement in the Mash-ka-wisen Treatment Center will mitigate against the defendant's risk of flight and his danger to the community. Such placement will do neither. For starters, the defendant's last placement in a treatment center in 2023 ended with him leaving the program without staff approval. Doc. 9 at 2. But more importantly, while a treatment program could assist the defendant in addressing his substance abuse problems, it will do nothing to address his potential for further criminal misconduct or his risk of flight. Moreover, treatment now will do little to address the defendant's long-term addiction issues when he likely will be serving in a sober-free environment for the next 25 years.

The case for detention in this case is compelling. The defendant committed an extremely serious drug offense; he is facing a sentence of at least 25 years if convicted; the evidence against him is overwhelming and will likely lead to his conviction; he is subject to a presumption of detention; he has a horrendous criminal record; and he has disregarded dozens of court orders in the past by reason of his numerous failures to appear, by committing offenses while on court-ordered probation, and by absconding from probation on at least four occasions. For these reasons, there are no conditions or combination of conditions that would reasonably assure the defendant's appearance and the safety of any other person and the community if he were released on bond.

WHEREFORE, the government respectfully asks this Honorable Court to grant the government's motion for detention and to order that the defendant be detained pending trial.

Dated: June 3, 2025

Respectfully submitted,

JOSEPH H. THOMPSON
Acting United States Attorney

s/ *Thomas M. Hollenhorst*

BY: THOMAS M. HOLLENHORST
Assistant United States Attorney
Attorney ID No. 46322